IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:12-CV-605 |
| v. | ) | |
| | ) | |
| BANK OF AMERICA N.A. | ) | |
| D/B/A BANK OF AMERICA | ) | |
| HOME LOANS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

The United States of America alleges:

1. This action is brought pursuant to Section 812(o) of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. § 3612(o) ("FHA") by the United States on behalf of Steven Danczak and Karen Danczak, Renee Mill, David Van Wagnen, and the Assistant Secretary for Fair Housing and Equal Opportunity of the Department of Housing and Urban Development ("Assistant Secretary"). This action is also brought by the United States to enforce the provisions of the FHA, 42 U.S.C. §§ 3601-3619, and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f ("ECOA").

### Jurisdiction and Venue

2. This Court has jurisdiction over this action under 28 U.S.C. § 1345, 42 U.S.C. § 3612(o), and 15 U.S. C. § 1691(h).

3. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant Bank of America N.A. D/B/A Bank of America Home Loans ("Bank of America") has its principal place of business in Charlotte, in the Western District of North Carolina.

1

**Complainants and Defendant**

4. Steven Danczak resides with his wife Karen Danczak in Eau Claire, Wisconsin. Mr. Danczak recieves Social Security Disability Insurance (hereinafter "SSDI") income and is handicapped as defined by the Fair Housing Act, 42 U.S.C. § 3602(h).

5. David Van Wagnen resides in Lapeer, Michigan. Mr. Van Wagnen receives SSDI income and is handicapped as defined by the Fair Housing Act, 42 U.S.C. § 3602(h).

6. Renee Mill resides in Oscoda, Michigan. Ms. Mill receives SSDI income and is handicapped as defined by the Fair Housing Act, 42 U.S.C. § 3602(h).

7. Defendant Bank of America is, and was during the time period relevant to the events at issue in this lawsuit, a bank holding company with its principal place of business in Charlotte, North Carolina. Bank of America offers the traditional services of a financial depository and lending institution, including the receipt of monetary deposits and the financing of residential housing and commercial loans.

**Factual and Legal Background**

**Steven and Karen Danczak**

8. Steven and Karen Danczak applied for a 30-year, fixed-rate mortgage loan insured by the Veteran's Administration ("VA") through Countrywide Home Loans (hereinafter "Countrywide") in or about April 2009. The loan was for the purchase of a dwelling located at 4712 Havenwood Lane, Eau Claire, Wisconsin, 54701.

9. The property located at 4712 Havenwood Lane, Eau Claire, Wisconsin, is a dwelling within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

10. On or about July 1, 2008, Bank of America acquired Countrywide. Bank of America processed the Danczak's loan application.

11. Mr. Danczak provided Bank of America with his Social Security award letter, his Veteran's Administration benefits award letter, and other relevant documents that substantiated his SSDI income and other income. None of the documents indicate that the SSDI benefits have an expiration date.

12. SSDI is a monthly benefit for people who have worked in the past and paid Social Security taxes. SSDI benefits may be paid to people who are unable to work for a year or more because of their disability.[1]

13. Social Security benefits, including SSDI, are "public assistance benefits" for purposes of ECOA and its implementing regulation, Regulation B.

14. All recipients of SSDI have been determined to be disabled by the Social Security Administration.

15. On or around May 19, 2009, Bank of America requested that Mr. Danczak provide a letter from Mr. Danczak's doctor saying he is permanently disabled.

16. Mr. Danczak did not provide a letter from a doctor and told the Bank that he believed the request was unlawful. Because Mr. Danczak did not provide the letter from his doctor, the Danczaks' loan application was not approved, and the closing date passed on the house they intended to purchase on Havenwood Lane. The Danczaks lost the opportunity to purchase the home they desired.

17. On May 27, 2009, Mr. Danczak filed a timely complaint with the United States Department of Housing and Urban Development (hereinafter "HUD"), pursuant to Section 810(a) of the Fair Housing Act, as amended 42 U.S.C. § 3610(a). In the complaint, Mr. and Mrs. Danczak allege that Bank of America discriminated on the basis

---

[1] The word "disability" is used interchangeably with "handicap," as defined in 24 C.F.R. § 100.201.

of Mr. Danczak's handicap in violation of subsections 804(f)(2) and 805 of the Fair Housing Act.

### David Van Wagnen

18. On or about August 10, 2009, David Van Wagnen applied to Bank of America for a 30-year, fixed-rate conventional home mortgage loan, to purchase the dwelling located at 638 Saint Clair Street, Lapeer, Michigan 48446.

19. The property located at 638 Saint Clair Street, Lapeer, Michigan, is a dwelling within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

20. In applying for his mortgage, Mr. Van Wagnen provided Bank of America with a copy of his Social Security award letter, a Social Security Benefit Statement, a copy of "Entitlement Status" from the Social Security Administration (hereinafter "SSA") which indicated the amounts of his monthly disability benefits, and other relevant documents that substantiated his SSDI income and other income. None of the documents indicate that the SSDI benefits have an expiration date.

21. On or about August 28, 2009, Bank of America requested that Mr. Van Wagnen provide a letter from his doctor stating that his SSDI benefits would continue for three years.

22. Mr. Van Wagnen contacted Bank of America on or about September 2, 2009, and questioned the need for the statement from his doctor.

23. A Bank of America employee stated that Mr. Van Wagnen's loan could not close unless he provided a letter from his doctor stating that his SSDI benefits would continue for three years.

24. Mr. Van Wagnen withdrew his loan application because he did not wish to comply with Bank of America's request.

25. Mr. Van Wagnen reapplied for a mortgage loan via a mortgage broker and incurred additional costs associated with the new application and loan.

26. On February 2, 2010, David Van Wagnen filed a timely complaint with HUD, pursuant to Section 810(a) of the Fair Housing Act, as amended 42 U.S.C. § 3610(a). In his complaint, Mr. Van Wagnen alleges that Defendant Bank of America discriminated on the basis of his handicap in violation of subsections 804(f)(2) and 805 of the Fair Housing Act.

### Renee Mill

27. In or around December, 2009, Renee Mill applied to Bank of America for a 30-year, fixed-rate conventional home mortgage loan, to purchase the dwelling located at 4941 Aaron Drive, Oscoda, Michigan 48750. Ms. Mill made her application via Huron Shores Mortgage Company ("Huron Shores"), a mortgage broker.

28. The property located at 4941 Aaron Drive, Oscoda, Michigan, is a dwelling within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

29. Ms. Mill provided Huron Shores with Social Security Benefit Statements for 2007 and 2008, and other relevant documents that substantiated her SSDI income. None of the documents indicate that the SSDI benefits have an expiration date.

30. On January 4, 2010, and again on January 15, 2010, Bank of America issued a document called a "Conditions Addendum" that indicated that before the closing documents could be prepared Ms. Mill would have to provide a letter from her doctor stating what her condition is.

31. Ms. Mill offered to provide Bank of America with statements from three individuals who would confirm her disability without specifying the nature or extent of her disability.

32. Bank of America made a statement to Huron Shores that it would not approve the loan without a letter from a doctor.

33. Ms. Mill provided letters from two doctors that detailed the nature of her disability. On or about January 29, 2010, Respondent Bank of America approved Mill's home mortgage loan.

34. On August 10, 2010, Renee Mill filed a timely complaint with HUD, pursuant to Section 810(a) of the Fair Housing Act, as amended 42 U.S.C. § 3610(a). In her complaint, Ms. Mill alleges that Bank of America discriminated on the basis of her handicap in violation of subsection 805 of the Fair Housing Act.

## Secretary-Initiated Complaint

35. On July 2, 2010, the Assistant Secretary filed a complaint with HUD, pursuant to Section 810(a) of the Fair Housing Act, as amended 42 U.S.C. § 3610(a). The complaint alleges that Bank of America discriminated because of disability in processing home mortgage applications in violation of section 805 of the Fair Housing Act.

36. Pursuant to the requirements of 42 U.S.C. §§ 3610(a) and (b) the Secretary of HUD conducted and completed an investigation of the above complaints, attempted conciliation without success, and prepared a final investigative report. Based on information gathered in the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause exists to believe that discriminatory housing practices have occurred. Therefore, on January 23, 2012, the Secretary issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(2)(A), charging Bank of America with engaging in discriminatory housing practices in violation of the Fair Housing Act.

37. On February 13, 2012, the Assistant Secretary elected to have the charge resolved in a federal civil action pursuant to 42 U.S.C. § 3612(a).

38. The Secretary of HUD has authorized the Attorney General to commence a civil action pursuant to 42 U.S.C. § 3612(o).

## Bank of America's Discriminatory Policies

39. From at least May 1, 2007 until approximately November 30, 2011, Bank of America had a written policy regarding the documentation of disability income that required disabled applicants present an "award letter indicating the payment amount and conditions for termination of payment which must continue for three years," or documentation from an insurance carrier or employer.

40. From at least May 1, 2007, until approximately November 30, 2011, it was the policy and practice of Bank of America to require disabled loan applicants who applied for mortgage loans using SSDI income to provide a letter from a doctor to establish that their receipt of SSDI income would continue for at least three years.

41. In some cases, Bank of America required disabled loan applicants to provide information about the nature and severity of their disability as a condition of receiving a mortgage.

42. From at least May 1, 2007, until approximately November 30, 2011, Bank of America did not require loan applicants who were not disabled to provide any proof that their income would continue for at least three years.

43. From at least May 1, 2007, until approximately November 30, 2011, Defendant Bank of America did not properly train its underwriters, loan officers, and other employees regarding appropriate documentation for SSDI income.

44. Defendant Bank of America is subject to the federal laws governing fair lending, including the Fair Housing Act and the Equal Credit Opportunity Act and their respective implementing regulations, the fair housing regulations of the Department of Housing and Urban Development, 24 C.F.R. § 100.1, et seq., and Regulation B of the Board of Governors of the Federal Reserve, 12 C.F.R. § 202.1, et seq. The Fair Housing Act prohibits financial institutions from, *inter alia*, discriminating on the basis of handicap in their home-mortgage lending practices. The Equal Credit Opportunity Act prohibits financial institutions from, *inter alia*, discriminating on the basis of receipt of public assistance in their home-mortgage lending practices.

45. Among the written guidelines and regulations applicable to SSDI income published by the entities that insure or purchase the mortgage loans at issue in this case, there is no written guideline or regulation that requires a lender to obtain a letter from a doctor.

46. As described herein Bank of America's policies and practices of requiring mortgage applicants who received SSDI income to provide a letter from a doctor constitute discrimination on the bases of handicap and receipt of public assistance. Bank of America's policies and practices were intended to deny and discourage, or have the effect of denying or discouraging, an equal opportunity to persons who are disabled and receiving SSDI income, to obtain lending services. These policies and practices are not justified by business necessity or legitimate business considerations because Bank of America could have properly documented SSDI income without a letter from a doctor.

**COUNT I**
**(Discrimination on the Basis of Disability)**

47. Bank of America's actions as alleged herein constitute:

a. Making, printing, or publishing any notice or statement with respect to the sale of a dwelling that indicates a preference, limitation, or discrimination on the basis of disability, in violation of the Fair Housing Act, 42 U.S.C. § 3604(c);

b. Discrimination in the sale, or otherwise making unavailable or denying, dwellings to buyers because of handicap, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(1);

c. Discrimination in the terms, conditions, or privileges of the sale of a dwelling, or in the provision of services in connection with such a dwelling, because of handicap in violation of the Fair Housing Act, 42 U.S.C. § 3604 (f)(2); "and"

d. Discrimination in making available a loan for the purchase of a dwelling, or in the terms or conditions of such a loan, based on handicap in violation of the Fair Housing Act, 42 U.S.C. § 3605;

## COUNT II
### (Discrimination on the Basis of Receipt of Public Assistance)

48. Bank of America's actions as alleged herein constitute:

    a. Discrimination against applicants with respect to credit transactions, on the basis of receipt of public assistance, in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(2); and

    b. Discrimination against applicants with respect to credit transactions by taking receipt of public assistance into account in evaluating creditworthiness, in violation of the Equal Credit Opportunity Act, Regulation B, 12 C.F.R. 202.4, 202.5, and 202.6.

9

## COUNT III
## (Pattern or Practice of Discrimination)

49. Bank of America's actions as alleged herein constitute:

    a. A pattern or practice of resistance to the full enjoyment of rights secured by the Fair Housing Act, in violation of 42 U.S.C. § 3614(a) and/or the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(h); and/or

    b. A denial of rights granted by the Fair Housing Act to a group of persons that raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

50. Persons who have been victims of Bank of America's discriminatory policies and practices are aggrieved persons as defined in 42 U.S.C. § 3602(i) and as described in 15 U.S.C. § 1691(e)(i), and have suffered damages as a result of defendant's conduct in violation of both the Fair Housing and the Equal Credit Opportunity Acts, as described herein.

WHEREFORE, the United States prays that the Court enter an order that:

1. Declares that the discriminatory housing practices of Defendant, as set forth above, violate subsections 804(c), 804(f)(1)-(2), and 805 of the Fair Housing Act, 42 U.S.C. § 3604(c), (f)(1)-(f)(2); 42 U.S.C. § 3605;

2. Declares that the discriminatory lending practices of Defendant, as set forth above, violate The Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(2), and Regulation B, 12 C.F.R. 202.4, 202.5, and 202.6;

3. Enjoins Defendant, its agents, employees, and successors, and all other persons in active

concert or participation with any of them, from:

    a. discriminating because of disability against any person in any aspect of home mortgage lending;

    b. discriminating because of receipt of public assistance against any person in any aspect of home mortgage lending;

    c. failing or refusing to take such affimrative steps as may be necessary to restore, as nearly as practicable, Steven and Karen Danczak, David Van Wagnen, Renee Mills, and any other aggrieved persons, to the position in which they would have been but for Defendant's unlawful conduct; and

    d. failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any conduct that violates the Fair Housing Act or the Equal Credit Opportunity Act in the future and to eliminate, to the extent practicable, the effects of Defendant's unlawful conduct; and

4. Awards such monetary damages as would fully compensate Steven and Karen Danczak, David Van Wagnen, Renee Mills, and any other aggrieved persons for injuries caused by Defendant's discriminatory conduct;

5. Awards civil penalties against the Defendant for each of its violations of the Fair Housing Act, pursuant to 42 U.S.C. § 3612(g)(3) and 24 C.F.R. § 180.671; and

6. Awards any additional relief as may be appropriate pursuant to 42 U.S.C. § 3612(g)(3).

The United States further prays for such additional relief as the interests of justice may require.

Dated: 9/13/ , 2012

|  |  |
|---|---|
| | ERIC H. HOLDER, JR.<br>Attorney General |
| | */s/ Thomas E. Perez*<br>THOMAS E. PEREZ<br>Assistant Attorney General<br>Civil Rights Division |
| /s/ Anne M. Tompkins<br>ANNE M. TOMPKINS<br>United States Attorney<br>Western District of North Carolina | |
| | */s/ Steven H. Rosenbaum*<br>STEVEN H. ROSENBAUM<br>Chief |
| /s/ Paul B. Taylor<br>PAUL B. TAYLOR<br>Assistant United States Attorney<br>Civil Chief<br>Western District of North Carolina<br>Bar No. NC 10067<br>227 W. Trade St.<br>Suite 1650<br>Charlotte, NC 28202<br>paul.taylor@usdoj.gov<br>Phone: (704) 344-6222<br>Fax: (828) 271-4327 | */s/ Jon Seward*<br>JON SEWARD<br>Deputy Chief<br><br>LUCY G. CARLSON<br>Trial Attorney<br>Housing and Civil Enforcement<br> Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue NW – G St.<br>Northwest Building, 7th Floor<br>Washington, DC 20530<br>lucy.carlson@usdoj.gov<br>Phone: (202) 305-0017<br>Fax: (202) 514-1116 |