**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:12-cv-605-RJC-DCK**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ORDER** |
| **BANK OF AMERICA, N.A. D/B/A BANK OF AMERICA HOME LOANS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** comes before the Court on the parties' Joint Motion for Entry of the Proposed Consent Order, (Doc. No. 5), filed pursuant to Federal Rule of Civil Procedure 7 and Local Civil Rule 7.1.

## I. BACKGROUND

The United States filed a Complaint on September 13, 2012, alleging violations by Bank of America of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619. (Doc. No. 1). In general terms, the United States alleges that the Bank discriminated against some mortgage applicants with a disability by requiring, as a condition of originating a mortgage loan, that the applicant provide a letter from a doctor to document his or her Social Security Disability Insurance ("SSDI") income. (Id.). Also on September 13, 2012, the parties filed a proposed consent order to resolve this matter. (Doc. No. 2).

On September 28, 2012, the parties filed a Joint Motion for Entry of the Proposed Consent Order, (Doc. No. 5). In their Motion, the parties state that "Bank of America, by agreeing to the Consent Order, is not admitting any of the allegations. Rather, the Consent Order

is entered into by the parties for the purpose of resolving disputed claims under the ECOA and the FHA and avoiding the expenses and risks of further litigation." (Id. at 1). In support of their Motion, the parties state that "the terms of the proposed Consent Order are adequate and appropriate, and that the settlement 'is not illegal, a product of collusion, or against the public interest.'" (Id. at 2) (quoting United States v. North Carolina, 180 F.3d 574, 581 (4th Cir. 1999)).

## II. STANDARD OF REVIEW

A consent order is a negotiated agreement that is entered as a judgment of the court, see Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 519 (1986), and thus has attributes of both contracts and judicial decrees, see United States v. ITT Continental Baking Co., 420 U.S. 223 (1975). As a negotiated agreement, a consent order:

> normally embodies a compromise: in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus, the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve.

United States v. Armour & Co., 402 U.S. 673, 681-82 (1971). A consent order is also a continuing order, one having prospective effect. Where, as here, the parties agree to the Court's continuing jurisdiction to enforce the order, see Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 381-82 (1994), a party aggrieved by the other's noncompliance may apply for an order to show cause why the noncompliant party should not be held in contempt. Bragg v. Robertson, 83 F. Supp. 2d 713, 717 (S.D. W. Va. 2000), aff'd sub nom. Bragg v. W. Virginia Coal Ass'n, 248 F.3d 275 (4th Cir. 2001).

A district court's "authority to adopt a consent decree comes only from the statute which the decree is intended to enforce," System Fed'n No. 91, Ry. Emp. Dep't v. Wright, 364 U.S.

642, 651 (1961), so that the focus of the court's attention in assessing the agreement should be the purposes the statute is intended to serve, rather than the interests of the parties to the settlement, see Citizens for a Better Env't v. Gorsuch, 718 F.2d 1117, 1126 (D.C. Cir. 1983). But a trial court approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy. See id. In fact, it is precisely the desire to avoid a protracted examination of the parties' legal rights that underlies entry of consent orders. Bragg, 83 F. Supp. 2d at 717 (citing Gorsuch, 718 F.2d at 1126). Both the parties and the general public benefit from the saving of time and money that results from the voluntary settlement of litigation. Id. (citing Gorsuch, 718 F.2d at 1126).

When considering whether to enter a proposed consent order, district courts "should be guided by the general principle that settlements are to be encouraged." North Carolina, 180 F.3d at 581. Additionally, "where a government agency charged with protecting the public interest has pulled the laboring oar in constructing the proposed settlement, a reviewing court may appropriately accord substantial weight to the agency's expertise and public interest responsibility." Bragg, 54 F. Supp. 2d at 660. Nevertheless, a district court should not blindly accept the terms of a proposed settlement, see Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir.1975). As the Fourth Circuit cautioned:

> Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny. Even when it affects only the parties, the court should, therefore, examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence.

Smyth ex rel. Smyth v. Rivero, 282 F.3d 268, 280 (4th Cir. 2002) (quoting United States v. Miami, 664 F.2d 435, 441 (5th Cir. 1981)).

Approval of a consent order is a judicial act, committed to the informed discretion of the trial court, which must satisfy itself that the agreement "is fair, adequate, and reasonable" and "is not illegal, a product of collusion, or against the public interest." North Carolina, 180 F.3d at 581. With these general considerations in mind, the Court considers the proposed consent order.

## III. ANALYSIS

The Court reviews whether the proposed consent order was validly consented to and is fair, reasonable, and consistent with the public interest. United States v. Wells Fargo Bank, N.A., No. 12-1150 (JDB), 2012 WL 4130513, at *2 (Sept. 20, 2012).

### A. Consent

Both parties represent that the settlement is a product of substantial negotiations involving experienced counsel for the United States and Bank of America. (Doc. No. 5 at 2). The content of the proposed order supports this representation, for it provides benefits to both sides and carefully limits and defines the agreement's requirements, reflecting extensive negotiation. Finally, the parties' status—Bank of America is a private, sophisticated, counseled litigant, and the plaintiff is the United States government—strongly supports a finding of valid consent. See Bragg, 54 F. Supp. 2d at 660.

### B. Fairness

Valid consent that resulted from good faith bargaining itself indicates that the proposed consent order is procedurally fair. Moreover, the possibility of a conflict of interest is particularly low in this suit: unlike a class action settlement where the possibility of collusion between the defendant and class counsel demands significant judicial scrutiny, a suit brought by the United States under the ECOA and FHA does not pose such potential conflicts of interest. See Miami, 614 F.2d at 1332 n.18.

Next, the Court finds the proposed consent order substantively fair. The parties state that "Bank of America, by agreeing to the Consent Order, is not admitting any of the allegations. Rather, the Consent Order is entered into by the parties for the purpose of resolving disputed claims under the ECOA and the FHA and avoiding the expenses and risks of further litigation." (Doc. No. 5 at 1); see also (Doc. No. 2-1 at 3) ("Bank of America enters into this settlement solely for the purpose of avoiding costly litigation with the Department of Justice, and to permit it to dedicate more of its resources to providing financial services to its many thousands of customers and to servicing its communities, employees and shareholders."). The proposed consent order reflects a compromise that addresses many of the United States' concerns and does so through terms Bank of America finds acceptable. The Court notes that Bank of America's denial of the allegations in the Complaint poses no barrier to approving the consent order. See United States v. Microsoft Corp., 56 F.3d 1448, 1461 (D.C. Cir. 1995) ("criticism of Microsoft for declining to admit that the practices charged in the complaint actually violated the antitrust laws was . . . unjustified"); see also SEC v. Citigroup Global Mkts. Inc., 673 F.3d 158, 165 (2d Cir. 2012) (per curiam) ("Finally, we question the district court's apparent view that the public interest is disserved by an agency settlement that does not require the defendant's admission of liability. Requiring such an admission would in most cases undermine any chance for compromise.").

C. Reasonableness

In examining the remedies the parties consent to, it is inappropriate for the Court to measure the remedies in the proposed consent order as if they were fashioned after trial. Remedies which appear less than vigorous may well reflect an underlying weakness in the government's case, and for the district court to assume that the allegations in the complaint have

been formally made out is unwarranted. Microsoft Corp., 56 F.3d at 1461. This agreement is eminently reasonable, and easily survives the limited scrutiny appropriate for the Court to undertake.

The proposed consent order is carefully tailored to ending the policies and practices that allegedly led to discrimination, and to assuring that no discrimination occurs in the future. It details specific policies concerning verification or documentation of SSDI and other disability income (collectively, the "Disability Income Policies") that address the allegations the United States made in its complaint and provides for extensive review and reporting to assure any future problems are promptly discovered and averted.

In addition to its prospective reach, the proposed consent order has a significant compensatory component, with Bank of America agreeing to pay between $1,000 and $5,000 to each loan applicant whom the United States identifies as an aggrieved person, should they choose to participate. If they choose to participate, these individuals will receive these payments much sooner than they would have had the case gone to trial. The proposed consent order also provides that the Steven and Karen Danczak, Renee Mill and David Van Wagnen (the Department of Housing and Urban Development ("HUD") Complainants) shall each receive between $25,000 and $50,000.

Bank of America will also expend additional resources to implement a monitoring program designed to ensure compliance with the Disability Income Policies and the proposed consent order. The program will be designed to monitor loan processing and underwriting activities for compliance with the Disability Income Policies, to detect any discrimination toward applicants who are disabled and rely on SSDI income in mortgage applications received after December 1, 2011. The proposed consent order thus offers a significant benefit to the United

States. At the same time, it is fair to Bank of America: despite denying that any compensation is warranted, Bank of America finds the requirement that it make these payments fair because it allows the Bank to avoid the expenses and risks of further litigation. (Doc. No. 5 at 1). The Court trusts this is a well-counseled assessment of the agreement's fairness towards Bank of America.

D. Public Interest

Finally, the Court must ensure that the agreement "is not illegal, a product of collusion, or against the public interest." North Carolina, 180 F.3d at 581. Entry of this consent order will not automatically affect the rights of third parties. Rather, those mortgage applicants the United States identifies as allegedly aggrieved persons have the option of signing a release in exchange for receiving payments from the settlement fund. Those who decline to do so will be in precisely the same position as they are at present. Nor does the agreement harm public interest more generally, by permitting certain discriminatory practices in violation of the ECOA or the FHA. On the contrary, the proposed consent order focuses heavily on eradicating the possibility of discrimination in the future. Thus, the agreement does not harm the public interest. The Court must give the government "rather broad discretion to settle with the defendant within the reaches of the public interest," Microsoft Corp., 56 F.3d at 1461, and this agreement falls squarely within the range of permissible discretion.

## IV. CONCLUSION

The Court finds that both parties validly consented to the proposed consent order, and that it is fair, reasonable, and consistent with the public interest.

**IT IS, THEREFORE, ORDERED** that the Joint Motion for Entry of the Proposed Consent Order, (Doc. No. 5), is **GRANTED**. The Consent Order will be entered forthwith as a

separate document.

Signed: October 10, 2012

Robert J. Conrad, Jr.
Chief United States District Judge