IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:12 CV-605 |
| v. | ) | |
| | ) | |
| BANK OF AMERICA, N.A. | ) | |
| D/B/A BANK OF AMERICA | ) | |
| HOME LOANS | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AMENDED CONSENT ORDER

## I. INTRODUCTION

The Consent Order resolves the claims of the United States that the Defendant, Bank of America N.A. D/B/A Bank of America Home Loans ("Bank of America" or "Bank"), in processing and underwriting mortgage loans, has engaged in a pattern or practice of violating the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, by discriminating on the basis of disability, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, by discriminating on the basis of receipt of public assistance. The Consent Order also resolves the claims of the United States brought pursuant to 42 U.S.C. § 3612(o) on behalf of Steven Danczak, Karen Danczak, Renee Mill, and David Van Wagnen.

There has been no factual finding or adjudication with respect to any matter alleged by the United States. The parties have entered into the Consent Order to avoid the risks, expenses, and burdens of litigation and to resolve voluntarily the claims in the Complaint of the Defendant's alleged violations of federal fair housing and fair lending laws.

## II. **BACKGROUND**

Bank of America is headquartered in Charlotte, North Carolina. As of December 31, 2011, it operated in all 50 states, the District of Columbia and more than 40 countries. The Bank provides a diversified range of banking and non-banking financial services and products. In 2011, the Bank originated approximately $152 billion worth of first mortgages.

The United States alleges that the Bank discriminated against some mortgage applicants with a disability by requiring, as a condition of originating a mortgage loan, that the applicant provide a letter from a doctor to document his or her Social Security Disability Insurance ("SSDI") income. Some applicants were asked for a letter from a doctor providing information about the nature and severity of the applicant's disability; other applicants were asked for a letter from a doctor indicating the duration of their disability. Among the written guidelines and regulations applicable to SSDI income published by the entities that insure or purchase the mortgage loans at issue in this case, there is no written guideline or regulation that requires a lender to obtain a letter from a doctor. Steven and Karen Danczak, Renee Mill, David Van Wagnen (the "HUD Complainants"), and the Assistant Secretary of HUD for Fair Housing and Equal Opportunity filed complaints with the Department of Housing and Urban Development ("HUD") as set out in the Complaint. Bank of America has agreed to pay money damages to the HUD Complainants and other mortgage applicants the United States has identified and will identify as aggrieved by similar alleged discriminatory conduct by the Bank between May 1, 2007, and April 30, 2012. The Bank also agrees to maintain the revised policies that it put in place in November 2011, prior to any determination by HUD regarding this matter, and provide training to its employees to ensure that disabled mortgage applicants are treated in a manner that

2

does not discriminate on the basis of disability or receipt of public assistance, consistent with the requirements of the FHA and the ECOA.

## III. POSITION OF BANK OF AMERICA

Bank of America denies the matters alleged in this lawsuit, and states that it has treated loan applicants fairly and without regard to impermissible factors, such as handicap or disability. Bank of America enters into this settlement solely for the purpose of avoiding costly litigation with the Department of Justice, and to permit it to dedicate more of its resources to providing financial services to its many thousands of customers and to serving its communities, employees and shareholders.

Bank of America contends that it sought to facilitate the ability of persons whose mortgage applications relied upon disability income to purchase homes. Thus, in certain cases, Bank of America requested a letter from a doctor regarding the expected duration of the disability of a mortgage loan applicant because of regulatory or investor requirements regarding the documentation of an applicant's income or anticipated income.

Bank of America asserts that it did not unlawfully discriminate against any person based on disability or otherwise. Bank of America is, and always has been, thoroughly committed to fair lending, non-discriminatory business practices and the promotion of equality across customer and borrower groups.

The United States acknowledges the substantial cooperation of Bank of America regarding the matters addressed in this Consent Order.

## IV. REMEDIAL ORDER

1.  The Effective Date shall be the date on which the Consent Order is approved and entered by the Court.

2.      The Bank, including all of its officers, employees, agents, assignees, successors in interest, and all those in active concert or participation with any of them, shall comply with all provisions of this Consent Order, and shall not discriminate against any mortgage loan applicant who relies on disability income by asking the applicant to provide a letter from a doctor to verify the continued eligibility to receive such income. This prohibition includes, but is not limited to, the adoption, performance, or implementation of any policy, practice, or act that requires an applicant who relies on disability income to produce a letter from a doctor.

## A.      Policies and Procedures

3.      In November 2011, Bank of America published new policies regarding proper documentation of SSDI and other disability income when underwriting mortgage loans under the headings "Employment and Income – Conventional" and "Documentation Types and Requirements." Bank of America shall maintain the policies concerning verification or documentation of SSDI and other disability income (collectively, the "Disability Income Policies") during the term of this Consent Order. During the term of this Consent Order, any proposed changes to the Disability Income Policies shall be submitted to the United States for approval. The United States shall make a determination regarding proposed changes within 30 days of receipt, or the proposed changes will be presumed to have been approved.

4.      In keeping with the Disability Income Policies, Bank of America shall not request that an applicant for a mortgage loan provide a letter from a doctor to document or substantiate disability income or to establish the duration of disability income.

5.      Bank of America shall take steps to destroy any and all medical information contained in its records regarding the HUD Complainants.

4

### B. Monitoring Program

6.     Within sixty (60) days of the Effective Date, Bank of America shall implement a monitoring program designed to ensure compliance with the Disability Income Policies and the Consent Order.  The program shall be designed to monitor loan processing and underwriting activities for compliance with the Disability Income Policies, to detect any discrimination toward applicants that are disabled and rely on SSDI income in mortgage applications received after December 1, 2011. In addition to the reporting requirements of Paragraph 37, the Bank shall inform the United States of the results of the monitoring program within sixty (60) days of the end of each six (6) month period.

7.     Bank of America shall provide a description of the monitoring program required under Paragraph 6 to the United States within 30 days of the Effective Date of the Consent Order.[1]  The United States shall have 30 days from receipt of the description to raise any objections to the monitoring program and the parties shall meet and confer to resolve any differences.  In the event they are unable to do so, either party may bring the dispute to this Court for resolution.

8.     If the results of the monitoring program identify loan applicants who were asked for a letter from a doctor concerning or relating to the verification of disability income, Bank of America shall take prompt corrective action, including compensation for identified applicant(s) consistent with Paragraphs 24 through 26 of the Consent Order, as well as additional training for employees who worked on the identified application(s).

---

[1]  All material required by the Order to be sent to counsel for the United States shall be sent by commercial overnight delivery service addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 1800 G Street NW, Suite 7002, Washington, DC 20006, Attn: DJ 188-55-9.  The parties may also agree to delivery electronically.

9.     A report on the results of the monitoring program required by Paragraph 6 shall be presented to the appropriate management committee (the "Committee") for review. The results of the monitoring program required by Paragraph 6, and the reports reviewed by the Committee shall be provided to the United States as part of the reports required by Paragraph 37.

### C.     Communication of the Disability Income Policies and Fair Lending Training Program

10.     Within 120 days of the Effective Date of the Consent Order, Bank of America shall: (a) inform residential mortgage loan originators, processors, and underwriters ("Applicable Employees") of the terms of this Consent Order (including providing access to the Consent Order through an Internet link) and (b) remind Applicable Employees of the Bank's Disability Income Policies. As part of this effort, Bank of America shall require that each Applicable Employee electronically acknowledge that he or she: (a) had access to the Consent Order and (b) understands the Bank's Disability Income Policies, and shall further provide a means for each Applicable Employee to submit questions concerning the Bank's Disability Income Policies. Such acknowledgements shall be substantially in the form of Appendix A (Employee Acknowledgment), and Bank of America shall retain records of these acknowledgements and make them available to the United States upon request.

11.     Within 120 Days of the Effective Date of the Consent Order, Bank of America shall update its existing fair lending training program for Applicable Employees to include information on the Consent Order and the Disability Income Policies, and shall communicate such update during the next scheduled fair lending training session(s). The content of this update shall be approved by the United States and shall remain in effect for the duration of the Consent Order. Bank of America shall retain records concerning each Applicable Employee's

participation in the fair lending training, and shall make such records available to the United States upon request.

### D. Complaint Resolution Program

12.     During the duration of the Consent Order, Bank of America shall maintain a complaint resolution program to address complaints alleging discrimination on the basis of disability and/or receipt of public assistance with regard to requests for a doctor's letter concerning verification of disability income ("Complaints"). Documentation regarding Complaints, if any, shall be included in the semi-annual reports referenced in Paragraph 37. There is no requirement under the Consent Order that any Complaint necessarily be resolved for or against Bank of America.

### E. Compensation for Aggrieved Persons

13.     Within thirty (30) days of entry of this Consent Order, Bank of America shall enter into a contract retaining a Settlement Administrator ("Administrator"), subject to approval by the United States, to conduct the activities set forth in Paragraphs 14 through 34. Bank of America shall bear all costs and expenses of the Administrator, and Bank of America shall provide to the Administrator all funds required to compensate the HUD complainants and others under the Consent Order. Bank of America's contract with the Administrator shall require the Administrator to comply with the provisions of this Consent Order as applicable to the Administrator.[2] The Administrator's contract shall require the Administrator to work

---

[2] In the event the United States has reason to believe that the Administrator is not materially complying with the terms of its contract with Bank of America, the United States and Bank of America shall meet and confer for the purpose of mutually agreeing upon a course of action to effect the Administrator's material compliance with its contract with Bank of America. In the event that the United States and Bank of America are unable to agree upon a course of action to effect the Administrator's material compliance with its contract with the Bank of America, the parties shall present the matter to the Court.

7

cooperatively with the United States in the conduct of its activities, including reporting regularly to and providing all reasonably requested information to the United States. Bank of America shall allow the Administrator access to all mortgage application loan files, and other records and documents that are in the possession of Bank of America or any entity owned by or affiliated with Bank of America, for the purposes of accomplishing the Administrator's tasks set forth in the Consent Order. The Administrator's contract shall require the Administrator to comply with all confidentiality and privacy restrictions applicable to the party who supplied the information and data to the Administrator. The Administrator's contract shall require the Administrator to make its best efforts, using all reasonable methods, to review all relevant loan application records to identify aggrieved persons, locate each identified aggrieved person, and obtain such information as the United States reasonably considers necessary from each. The Administrator's contract shall require the Administrator, as part of its operation, to establish cost-free means for aggrieved persons to contact it, including an email address, a toll-free telephone number, and means for persons with disabilities to communicate effectively, including TTY.

Phase I of Identification of Aggrieved Persons

14.     Within sixty (60) days of the Effective Date, Bank of America shall identify all loan applications made during the period May 1, 2009, through April 30, 2012, that listed SSDI income ("Relevant Applications") and shall make available to the Administrator all records relating to the Relevant Applications. The borrower and co-borrower named in the Relevant Applications shall be referred to as "Relevant Applicants."

15.     In consultation with the United States, the Administrator shall design a method for review of the records related to the Relevant Applications, which shall include a combination of electronic searching and manual file review. "Manual file review" shall include a review of

8

each page of the loan file and relevant records by an employee of the Administrator who clearly understands the requirements of this Consent Order and is competent to identify relevant documents and make determinations in accordance with Paragraphs 24 through 26. The Administrator shall convert all records related to the Relevant Applications to a searchable format. The Administrator shall conduct electronic searches to identify Relevant Applicants who may be eligible to be compensated under this Consent Order. The Administrator shall conduct manual file reviews of the records related to the Relevant Applications identified by electronic searches.

16.     Based upon the manual file review, the Administrator shall make preliminary determinations regarding whether each Relevant Applicant is an Aggrieved Person and therefore eligible for an award as set out in Paragraphs 24 through 26. Bank of America agrees to accept these determinations without objection. The Administrator shall make preliminary determinations for Relevant Applications identified by electronic searches within a period of four months from the Effective Date, subject to an extension of time as provided by Paragraph 39.

Phase II of Identification of Aggrieved Persons

17.     The Administrator shall send a letter and form of affirmation substantially similar to Appendix C to all remaining Relevant Applicants who have not been identified by the United States as Aggrieved Persons.

18.     For each response the Administrator receives to the letter required by Paragraph 18, the Administrator shall manually review the loan file and any contemporaneous records provided by the responding Relevant Applicant, and make a preliminary determination regarding whether the responding Relevant Applicant is an Aggrieved Person and therefore eligible for an award as set out in Paragraphs 24 through 26. The Administrator shall make its preliminary determinations in

consultation with the United States. Bank of America agrees to accept these determinations without objection.

Review of Records for Loan Applicants Who Contact the Administrator

19.    If any person contacts the Administrator or is referred to the Administrator by the United States, claiming that Bank of America discriminated on the basis of disability relating to a mortgage application by requiring that the mortgage applicant provide a letter from a doctor as a condition of originating a mortgage loan, the Administrator shall request from Bank of America all relevant records for that person. The Administrator shall manually review the loan file, and any contemporaneous records provided by the claimant, and make a preliminary determination regarding whether the person is an Aggrieved Person and therefore eligible for an award as set out in Paragraphs 24 through 26. The Administrator shall make its preliminary determinations in consultation with the United States. Bank of America agrees to accept these determinations without objection. The deadline for a person to contact the United States or the Administrator under this Paragraph shall be 180 days after the Effective Date; however the deadline shall be extended to be consistent with any extension of the four-month period in Paragraph 16.

Final Determinations by the United States

20.    Every ninety (90) days, the Administrator shall provide reports to the United States and Bank of America, including the Administrator's preliminary determinations regarding whether each Relevant Applicant is eligible for an award, and relevant loan documents.

21.    The United States shall review all preliminary determinations of the Administrator and shall make final determinations regarding which Relevant Applicants are Aggrieved Persons and the amount of compensation to be paid to each Aggrieved Person under

the terms of this Consent Order. Bank of America shall not review these determinations or have the right to object to any determination.

22.     The Administrator shall send a letter and release substantially similar to Appendices B and D to persons who are determined by the United States to be Aggrieved Persons eligible for compensation.

23.     If an Aggrieved Person does not respond to a letter from the Administrator within 60 days, the Administrator shall take reasonable steps to confirm the current address of the Aggrieved Person and shall send a second letter to the current address via Federal Express.

Compensation Amounts for Aggrieved Persons

24.     The Administrator shall pay $2,500 in monetary damages to each loan applicant whom the United States identifies as an Aggrieved Person meeting all of the following criteria:

- Applicant applied to Bank of America for a mortgage loan between May 1, 2007, and April 30, 2012; and

- There is information in the loan file or other contemporaneous records relating to the loan application that the applicant was asked to provide a letter from a doctor regarding the nature or severity of the applicant's disability.

25.     The Administrator shall pay $1,000 in monetary damages to each loan applicant whom the United States identifies as an Aggrieved Person meeting all of the following criteria:

- Applicant applied to Bank of America for a mortgage loan, other than a loan insured by the Federal Housing Administration, between May 1, 2007, and April 30, 2012; and

- There is information in the loan file or other contemporaneous records relating to the loan application indicating that the applicant was asked to provide a letter

11

from his or her doctor regarding his or her disability, or there is a letter from the applicant's doctor regarding the applicant's disability in the loan file.

26.     The Administrator shall pay $5,000 in monetary damages to each loan applicant whom the United States identifies as an Aggrieved Person meeting all of the following criteria:

- The applicant qualifies as an Aggrieved Person under either Paragraph 24 or Paragraph 25 above; and

- The loan file or other contemporaneous documents indicate that the applicant was unwilling to provide a letter from a doctor or objected to providing a letter from a doctor, or

- The loan file or other contemporaneous documents indicate specific economic harm caused by denial of the loan application or failure to originate the loan because the applicant did not provide a letter from a doctor.

27.     The compensation amounts set out in Paragraphs 24 through 26 are mutually exclusive and are to be paid on a per loan or per application basis; if there is a borrower and co-borrower or an applicant and co-applicant, they will share the compensation equally.

Compensation Amounts for HUD Complainants

28.     Within five (5) business days of receipt of a properly executed release in the form of Appendix B, or entry of this order, whichever is later, Bank of America shall pay HUD complainants Steven and Karen Danczak $50,000 total.

29.     Within five (5) business days of receipt of a properly executed release in the form of Appendix B, or entry of this order, whichever is later, Bank of America shall pay HUD complainant Renee Mill $50,000.

12

30.    Within five (5) business days of receipt of a properly executed release in the form of Appendix B, or entry of this order, whichever is later, Bank of America shall pay HUD complainant David Van Wagnen $25,000.

Payment Procedures

31.    On or before the fifth day of each calendar month, the Administrator shall send a request for funding to Bank of America, providing (a) copies of the executed releases, if any, received in the previous calendar month from Aggrieved Persons, and listing (b) the compensation to be paid to each Aggrieved Person and (c) the total dollar amount required to compensate those Aggrieved Persons.

32.    Bank of America shall transmit the requested funds to the Administrator within ten (10) days of receipt of a request for funding.

33.    The Administrator shall transmit the proper funds to each Aggrieved Person within ten (10) days of receipt of funds from Bank of America.

34.    No aggrieved person shall be paid any amount under this Consent Order until he or she has executed and delivered to the Administrator a written release as set forth in Appendix B.

35.    Bank of America shall not be entitled a set-off, or any other reduction, of the amount of payments to an aggrieved person because of any debts owed to Bank of America by an aggrieved person.  Bank of America also shall not refuse to make a payment based on a release of legal claims previously signed by any Aggrieved Person.

13

## V. EVALUATING AND MONITORING COMPLIANCE

36.　For the duration of the Consent Order, Bank of America shall retain all records relating to its obligations hereunder as well as its compliance activities as set forth herein. The United States shall have the right to review and copy such records upon request, including files and electronic data for mortgage applications made during the duration of the Consent Order.

37.　In addition to the submission of any other plans or reports specified in the Consent Order, Bank of America shall submit reports to the United States on its progress in completing the requirements of the Consent Order. Each such report shall provide a complete account of Bank of America's actions to comply with each requirement of the Consent Order during the previous reporting period, an assessment of the extent to which each obligation was met, an explanation of why any particular obligation was not met for the previous reporting period, and any recommendations for additional actions to achieve the obligations of the Consent Order. Bank of America shall submit reports every six months in the first year after the Effective Date and shall submit annual reports on the anniversary of the Effective Date thereafter for the duration of the Consent Order. In addition, if applicable, Bank of America shall attach to the reports copies of training materials disseminated pursuant to the Consent Order.

## VI. ADMINISTRATION

38.　The Consent Order shall remain in effect for 42 months after the Effective Date. Notwithstanding the above, the Consent Order may be extended further upon motion of the United States to the Court, for good cause shown.

39.　The details in administration set forth in Paragraphs 13 through 23 and Paragraphs 31 through 34 may be modified by written agreement of the parties and without further Court approval. Any time limits for performance fixed by the Consent Order may be extended by

14

written agreement of the parties. Other modifications to the Consent Order may be made only upon approval of the Court, upon motion by either party.

40. The Consent Order shall be binding on Bank of America, including all its officers, employees, agents, representatives, assignees, and successors in interest, and all those in active concert or participation with any of them. In the event Bank of America seeks to transfer or assign all or part of its operations, and the successor or assign intends on carrying on the same or similar use, as a condition of sale, Bank of America shall obtain the written agreement of the successor or assign to any obligations remaining under the Consent Order for its remaining term.

41. Nothing in the Consent Order shall excuse Bank of America's compliance with any currently or subsequently effective provision of law or order of a regulator with authority over Bank of America that imposes additional obligations on Bank of America.

42. The parties agree that, as of the date of entry of the Consent Order, litigation is not "reasonably foreseeable" concerning the matters described in the Consent Order. To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in the Consent Order, the party is no longer required to maintain such a litigation hold, with the exception of documents, electronically-stored information, or other things relating to loans originated by Bank of America between May 1, 2007, and April 30, 2012.

43. In the event that any disputes arise about the interpretation of or compliance with the terms of the Consent Order, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to this Court for resolution. If the United States believes that Bank of America has violated any provision of the Consent Order, it will provide the Bank written notice thereof and allow 30 days to resolve the alleged violation before

15

presenting the matter to this Court. In the event of either a failure by the Bank to perform in a timely manner any act required by the Consent Order or an act by the Bank in violation of any provision hereof, the United States may move this Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

44. Bank of America's compliance with the terms of the Consent Order shall fully and finally resolve all FHA claims and all ECOA claims that are raised in the Complaint's allegations of discrimination on the basis of disability and receipt of public assistance, including all claims for equitable relief and monetary damages and penalties arising from those claims, for mortgage applications made to Bank of America between May 1, 2007, and April 30, 2012. The Consent Order does not release any other legal claims, including claims that may be held or are currently under investigation by any federal agency. The Consent Order does not release claims for practices not addressed in the Complaint's allegations, including claims that may be held or are currently under investigation by any federal agency, or any claims that maybe pursued for actions that may be taken by any executive agency established by 12 U.S.C. § 5491 or the appropriate Federal Banking Agency ("FBA"), as defined in 12 U.S.C. § 1813(q), against Bank of America, any of its affiliated entities, and/or any institution-affiliated party of Bank of America, as defined in 12 U.S.C. §1813(u), pursuant to 12 U.S.C. § 1818 or any statute or regulation. The Consent Order does not resolve and release any claims other than claims for discrimination.

45. The United States and Bank of America shall bear their own costs and attorneys' fees associated with this litigation.

46. The Court shall retain jurisdiction for the duration of the Consent Order to enforce the terms of the Consent Order, after which time the case shall be dismissed with prejudice.

SO ORDERED, this 5 day of December, 2012.

UNITED STATES DISTRICT JUDGE

17

The undersigned hereby apply for and consent to the entry of the Order:

**For Plaintiff United States of America:**

Dated: December 4, 2012

Respectfully submitted,

ANNE M. TOMPKINS
United States Attorney
Western District of North Carolina

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief

_/s/ Paul B. Taylor_____
PAUL B. TAYLOR
Assistant United States Attorney
Civil Chief
Western District of North Carolina
Bar No. NC 10067
227 W. Trade St.
Suite 1650
Charlotte, NC 28202
paul.taylor@usdoj.gov
Phone: (704) 344-6222
Fax: (828) 271-4327

JON SEWARD
Deputy Chief

_/s/ Lucy G. Carlson_____
LUCY G. CARLSON
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Northwest Building, 7th Floor
Washington, DC 20530
lucy.carlson@usdoj.gov
Phone: (202) 305-0017
Fax: (202) 514-1116

**For Bank of America:**

Dated: December 4, 2012                    Respectfully submitted,


_/s/ Phillip L. Schulman_____
PHILLIP L. SCHULMAN
K&L Gates
1601 K Street, NW
Washington, DC 20006-1600
Phone: (202) 778.9027
Fax: (202) 778.9100

## APPENDIX A

### Employee Acknowledgment


I acknowledge that on _____, I was provided information about and access to the Consent Order entered by the Court in United States v. Bank of America , N.A. (W.D.N.C.), as well as Bank of America's Disability Income Policies.  I have had my questions about these documents answered.  I understand my legal responsibilities and shall comply with those responsibilities.


_____
Signature

_____
Print Name

_____
Job Title

_____
Date

## APPENDIX B

### Release

  In consideration for the parties' agreement to the terms of the Consent Order entered in

<u>United States v. Bank of America, N.A.</u> (W.D.N.C.), and the payment to me of $_____,

pursuant to the Consent Order and effective upon that payment, I hereby release and forever

discharge all claims, rights, remedies, and recoveries related to the facts of housing and credit

discrimination on the basis of disability and receipt of public assistance in the litigation

referenced above, and release and forever discharge all claims, rights, remedies, and recoveries

arising from housing and credit discrimination on the basis of disability and receipt of public

assistance alleged in that litigation in connection with my application(s) for a residential

mortgage, known and unknown, up to and including the date of execution of this release.  I

understand that this releases those claims, rights, remedies and recoveries against Bank of

America, N.A. and against any and all related entities, parents, predecessors, successors,

subsidiaries, and affiliates, and against any and all of their past and present directors, officers,

agents, managers, supervisors, shareholders, and employees and their heirs, executors,

administrators, successors in interest, or assigns.

  Executed this \_\_\_ day of _____, \_\_\_\_.


_____
Signature
_____
Print Name
_____
Address

## APPENDIX C

[Letter to Relevant Applicants not identified as Aggrieved Persons]

The United States settled certain claims regarding discrimination on the basis of disability against Bank of America. On [date] the United States District Court for the Western District of North Carolina entered an order regarding this settlement. Among other things, Bank of America has agreed to compensate persons whom the United States determines were discriminated against when they used Social Security Disability Insurance ("SSDI") income on their mortgage applications.

We are writing to you because Bank of America's records indicate that you applied for a mortgage between May 1, 2009, and April 30, 2012, and that you LISTED SSDI income on your application. If you were asked to provide a letter from your doctor to support your mortgage application, you may be eligible to receive compensation of $1,000, $2,500, or $5,000, depending upon the circumstances.

**If you were asked to provide a letter from your doctor and you would like to participate in the settlement with Bank of America, please complete and sign the attached form and return it in the enclosed envelope.** If you were not asked to provide a letter or you do not want to participate, you do not need to respond in any way.

If you return this form, you are not guaranteed compensation. Your loan file will be reviewed to determine if you are qualified to receive compensation.

**If you wish to participate, you must return the attached form within thirty (30) days.** If you have any questions about this matter, please feel free to contact [name and contact info for Administrator].

## AFFIRMATION THAT BANK OF AMERICA
## REQUESTED A LETTER FROM A DOCTOR

[name and address of applicants]
[loan number of application]

By my signature I hereby certify and affirm under penalty of perjury, that Bank of America or an employee of Bank of America requested that I provide a letter from a doctor as part of the mortgage application process.*

Executed this ____ day of _____, ____.

_____
Signature

_____
Print Name

_____
Address

_____
City, State, Zip Code

_____
Telephone Number

\* **Perjury** is the criminal offense of making false statements under oath.

## APPENDIX D

[Letter to Aggrieved Persons]

The United States settled certain claims regarding discrimination on the basis of disability against Bank of America. Among other things, Bank of America has agreed to compensate persons whom the United States has determined were discriminated against when they used Social Security Disability Insurance ("SSDI") income on their mortgage applications.

On [date] the United States District Court for the Western District of North Carolina entered an order regarding this settlement. **Under the Court's order, the United States has determined that Bank of America should pay you $_____.** To receive your payment, you must sign and return the enclosed Release. By signing the Release, you agree that you will not sue Bank of America for any claims you may have against them based on alleged discrimination on the basis of your SSDI income. If you decide to sign this Release, please write the date, print your name and sign your name where designated. **You should return the signed Release in the enclosed pre-addressed postage pre-paid envelope.**

After you sign and return the release, and the monetary payment is received from Bank of America and processed by [Administrator], the money that is to be paid to you will be sent to you by check.

Please be aware that the money you receive may be considered taxable income and thus may affect your federal, state, or local tax liability. This office cannot give you any advice on tax or other legal matters. We encourage you to consult with a qualified individual or organization about any possible tax or other consequences resulting from your receipt of this payment.

If you do not want to participate in this settlement, you may decline to do so. By declining to participate, you will give up your right to receive money through this settlement, but will not waive any other rights or claims that you believe you may have.

Please also be advised that government attorneys cannot act as your private attorney. Therefore, you may want to consult with a private attorney to discuss this matter and the options available to you or to have an attorney of your choice contact us.

If you have any questions about this matter, please feel free to contact [name and contact info for Administrator].